JOHN D. McLEAN, Respondent, *v.* ANDREW McLEAN, Appellant.

(Argued June 12, 1884 ; decided June 24, 1884.)

THIS was an action to recover $5,000, as liquidated damages which plaintiff claimed that he was entitled to under a contract between the parties, executed January 29, 1881, which, after reciting that the parties were owners as tenants in common of certain premises situate in the city of New York, and after providing for the payment of a mortgage upon the property, contained this provision :

"And, whereas, it is the desire of party of first and of second part to sell and dispose of the said property, now, therefore, it is further agreed that the premises now used by party of first part, with all the appurtenances, are hereby leased to party of first part for the period up to May 1, 1882, at the rate of $900 per year, but with the proviso if party of first part wishes to give up the lease at any time, he shall have that privilege and the rent shall cease immediately, and party of first part agrees so to hire it; and it is further agreed by and between the parties, to try and sell and dispose of the property (subject to the above lease), and hereby agrees to sell it for the sum of $31,000, and if not sold within one year from the date hereof, then either the party of the first part or the party of the second part is hereby empowered to employ an auctioneer to suitably advertise and sell the property at public auction within thirty days, at the best price the auctioneer can then get for it, proceeds of sales to be divided equally between party of first part and party of second part, during which time each party shall collect their respective shares of the rents themselves — each for himself — the said party of the first part and of the second part shall and will, at the time appointed by the party securing a customer, whether by private sale or at auction, at each's own proper cost and expense, execute and deliver to the purchaser, or to his or their assigns, a proper deed of conveyance, duly acknowleged, for the conveying and assuring to him or them the fee-simple of the said premises, free from all incum-

brances, which deed of conveyance shall contain a general warranty, and the usual full covenants. And it is understood and agreed that the stipulation aforesaid is to apply to and bind the heirs, executors, administrators and assigns of the respective parties."

"And it is further hereby agreed that in case the said party of the first part or second part shall fail or refuse to execute and deliver a proper deed of conveyance in manner and at the time above specified for that purpose, provided the purchaser shall be ready to fulfill and perform the covenants then to be fulfilled on his or their part, then the party of the first or second part so failing shall and will pay to the other party or his assigns, the sum of five thousand ($5,000) dollars, which sum is hereby declared, fixed and agreed upon, as the liquidated amount of damages to be paid by the party so failing as aforesaid, for his non-performance."

On March 14, 1881, the plaintiff, individually, entered into a contract with one Thompson for the sale to him of the property for the sum of $31,500 to be paid to the plaintiff, $500 on the execution of the contract, which was paid, and $31,000 upon the production and delivery to Thompson of a warranty deed of said premises, executed by the plaintiff with his wife, and by defendant and his wife. The contract also provided that if defendant refused to execute the deed, Thompson should have the election to purchase plaintiff's undivided half, or to rescind the contract. Plaintiff notified defendant of the making of the contract, and requested him, with his wife, to execute the deed ; this defendant did not do. Thompson elected to rescind the contract, and plaintiff thereupon paid back to him the $500. The premises were subsequently sold at auction for $35,100, defendant being the purchaser ; he paid to plaintiff his half of the purchase-price.

The court here say :

"It is plain that if the contract made by the plaintiff with Thompson for the sale to the latter of the premises owned by the plaintiff and defendant as tenants in common was not authorized by the agreement of January 29, 1881, between these parties, or was not such a contract as was contemplated by

that agreement, the refusal of the defendant to convey to Thompson, in fulfillment of the contract of sale, was not a breach of the agreement, and furnished no basis for the recovery of the $5,000 damages under the covenant in question. So, also, if the contract with Thompson exempted the plaintiff from liability to Thompson for damages in case of a refusal of the defendant to convey, indemnity against which was the consideration and purpose of the covenant in question, the action cannot be maintained.

" It becomes material, therefore, to determine the nature and extent of the authority conferred upon the respective parties by the agreement of January 29, 1881, and then to consider whether the contract entered into between the plaintiff and Thompson was a good execution of that authority, or such an execution as binds the defendant to pay the liquidated damages. One purpose of that agreement was to adjust the equities between the parties as to the $15,000 mortgage on the premises, held by the Mutual Life Insurance Company. The purpose was accomplished by the provision that each of the parties should assume the payment of an undivided half of the mortgage. The other purpose was to secure a sale of the whole property, if practicable, at the price of $31,000, and to that end the parties respectively agreed to try and sell, and that they would sell the same for the price named; and they further agreed that if the premises were not sold within one, year, either party should have the right to employ an auctioneer to advertise and sell them at public auction, on thirty days' notice, for the best price that could be obtained, the ' proceeds of the sale to be equally divided between them.'

" The agreement confers no express authority upon either party to enter into a contract for himself and as agent for his co-tenant to sell the property at the price fixed. But construing the contract as a whole, we are of opinion that this authority was intended to be conferred, and that the provision for liquidated damages was inserted with reference to a breach by either party of a contract entered into by both or by one for himself and his co-tenant. Each was empowered to employ an auctioneer to sell the property. An auctioneer ap-

pointed under the power would be the agent of both parties, and both would be bound by his act, and a contract of sale made by him would be the contract of both and could be enforced as such.   So far as this particular power is concerned, it was a power of each to act for both in the contingency contemplated.   A refusal by either to convey according to the terms of auction sale would constitute a breach of his own contract, although made by the auctioneer on the employment of the other party.

"Referring to the clause providing for liquidated damages, the natural construction is that they were intended as an indemnity for a failure of either party to perform his own contract to convey and not for a refusal to convey in accordance with the contract of one acting for and binding himself alone.   A person owning an undivided share in real estate may bind himself by a contract to sell the whole, relying on his ability to purchase the other shares, or to induce the co-owners subsequently to join in the sale.

"But the point is, was this the nature of the contract contemplated by the agreement of January 29, 1881, a breach of which by the other party was to subject the latter to the payment of the stipulated damages.   We think not.   The damages are to be paid in case either party 'shall fail or refuse to execute and deliver a proper deed of conveyance, etc., provided the purchaser shall be ready to fulfill and perform the covenants on his part.'

"This language naturally refers to a contract containing mutual covenants on the part of the contracting parties, which one of the vendors should refuse to complete.   This view is strengthened by a consideration of the probable purpose of this clause.   It is to be noticed that it is not a contract between vendor and vendee for the payment by the one to the other of stipulated damages in case of a breach, but a contract between the co-tenants, by which one agrees to pay to the other the sum agreed, on a refusal to convey.

"This stipulation was important as a protection against liability to a vendee for the damages to which each party would be exposed by the failure of the other to perform a contract

entered into by one and binding upon both. Each co-tenant could convey only his own share, but nevertheless if the parties entered into a contract for the sale of the whole property, they would be jointly liable for the default of either, and indemnity against this liability was doubtless the main purpose of the clause in question.

"The contract made by the plaintiff with Thompson was not the contract of both co-tenants. It did not purport to bind both. It was the individual contract of the plaintiff as vendor, with Thompson as purchaser. Such a contract, not mutually binding upon both co-tenants, nor executed by one in behalf of both, was not, we think, in the mind or contemplation of the parties to the agreement of January 29, 1881. Moreover the contract with Thompson exempts the plaintiff from liability for damages for a refusal of his co-tenant to convey his share. It provides that in case of the refusal of the defendant to convey, the purchaser may elect to take the plaintiff's share on paying to him one-half of the purchase-money, to-wit, $7,500, and assuming one-half of the mortgage of $15,000, or to annul the contract, and in case the vendee elects to rescind, that the plaintiff shall restore the $500 purchase-money received from the defendant, and pay the latter $150 for expenses of searches and disbursements. The only loss the plaintiff assumed in case of the default of the defendant was the loss of $150, and the loss of the bargain.

"It cannot be reasonably supposed that the parties intended that the loss of a chance by the plaintiff to sell his interest in the property of $7,500, by reason of the default for the defendant, should be compensated by a payment to him by the latter of $5,000. The substantial risk intended to be covered by the indemnity was of loss resulting from the liability to the vendee, in case of a refusal by either co-tenant to convey. But this risk was provided against in the contract of sale, and it would be very inequitable, and not we think in accordance with the true construction of the agreement of January 29, 1881, to permit the plaintiff, under the circumstances, to recover the liquidated damages specified.

"Upon these grounds we think the judgment should be re-

versed, and it is unnecessary to consider the other grounds relied upon for the reversal of the judgment, although we see no answer to the point that the stipulation in the Thompson contract, that the whole purchase-money should be paid to the plaintiff, remitting the defendant for his interest to a claim against the plaintiff, was not authorized in any view, by the agreement between the parties, and that the defendant was not bound to perform a contract containing such a provision.

" The judgment should, therefore, be reversed and the complaint dismissed, with costs."

*John E. Parsons* for appellant.

*Nathaniel C. Moak* for respondent.

ANDREWS. J., reads for reversal of judgment and dismissal of complaint.

All concur.

Judgment accordingly.